## HAZARD v. COLUMBIA BROADCASTING SYSTEM, Inc., et al.
### No. 10975.

Circuit Court of Appeals, Ninth Circuit.

Aug. 7, 1945.

Loewenthal & Elias and J. Robert Arkush, all of Los Angeles, Cal., for appellant.

Mitchell, Silberberg & Knupp and Guy Knupp, all of Los Angeles, Cal., for appellees.

Before DENMAN, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

Appellant copyrighted an original dramatic composition entitled "A Man's Castle" and assigned to Columbia Pictures Corporation very broad privileges in the work. By the assignment the entire motion picture rights and other rights of a collateral nature were set over to Columbia, including the right to broadcast sketches of the motion picture version. Pursuant to its license Columbia produced a photoplay of the composition. It later granted to appellee Walter Pidgeon a license to produce a single radio broadcast based on the screen play.

Appellant was of the belief that the broadcasted performance which followed violated his agreement with Columbia and constituted an infringement of his copyright. He sued Pidgeon, together with the latter's associates, the broadcasting company and the sponsor, for damages for infringement. The Court found that the broadcast was a sketch of the motion picture version, and it accordingly concluded that there was neither violation of the assignment to Columbia nor infringement of the copyright. Hence this appeal.

Appellant claims that the radio version was an adaptation, not of the motion picture play, but of his original work. There is, however, no showing to that effect. The original dramatic work is not before us for comparison; the record contains only the motion picture play and the radio script. It was, in effect, stipulated that, in the performance of his labors, the writer of the radio script did not have access to the original dramatic composition but to the screen play only, and that the radio adaptation was written entirely from the scenario.

Another argument is that the broadcast was of the entire play, that is to say, it was not a "sketch" of the screen performance within the intendment of the assignment to Columbia. As above noted, the trial court found otherwise, and the finding appears to be substantially supported. It is a persuasive fact that the radio performance, including the usual interpolated commercials, consumed about thirty minutes of

time, whereas portrayal of the screen play requires almost two hours. As further evidence of the condensed nature of the radio performance we note that the radio script covers twenty-five pages of the record, whereas the scenario fills one hundred seventy-six pages. It is not unfair to say that the one is substantially a sketch or synopsis of the other.

From the standpoint of Columbia Pictures the radio sketch was doubtless intended to function primarily as an advertisement of the screen play. In the license granted to Pidgeon the latter was obligated to announce at the outset the title of the motion picture and the fact that the play was a Columbia Pictures production.

Appellant complains of the exclusion of an exhibit consisting of a printed form of contract said to have been used at some other time by Columbia. The exhibit was properly rejected as irrelevant.

Affirmed.